# IN THE UNITED STATES DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| WSTCO QUALITY FEED AND SUPPLY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY J. ADA *et al.*,<br><br>Defendants. | Case No.: 17-cv-00127<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S MOTION TO AMEND, ROJAS' MOTION FOR PROTECTIVE ORDER, AND PLAINTIFF'S MOTION TO STRIKE** |

## I.     INTRODUCTION

Plaintiff WSTCO Quality Feed and Supply, LLC ("WSTCO") has filed a civil rights case against the Members of the Guam Ancestral Lands Commission ("GALC") and the Administrator of the Guam Economic Development Authority ("GEDA"). (Compl., ECF No. 1.) Plaintiff alleges three claims: that the GALC Defendants violated its due process rights by improperly terminating a lease agreement, that all Defendants conspired to violate its due process rights, and that they all discriminated against it in violation of the Equal Protection Clause. (*Id.*)

Defendants have filed motions to dismiss, asserting that they are entitled to qualified immunity, that Plaintiff has failed to state a claim, and many of the acts underlying Plaintiff's claims are barred by the statute of limitations. (Rojas Mot., ECF No. 8; GALC Defs. Mot., ECF No. 12; Rojas Joinder, ECF No. 17.) The motions to dismiss have been fully briefed, and the Court heard argument on March 7, 2018. Following the hearing, Plaintiff filed a motion to amend the complaint. (ECF No. 44.) Defendant Rojas filed a motion for a protective order to enforce the Court's order staying discovery

while the motions to dismiss were pending. (ECF No. 53.) All motions have been fully briefed.[1]

For the reasons detailed below, Defendants' motions to dismiss are GRANTED. Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART. Defendant Rojas' motion for a protective order is DENIED AS MOOT, and Plaintiff's motion to strike the GALC Commissioners' notice of joinder is also DENIED AS MOOT.

## II. BACKGROUND

In 2006, Plaintiff entered into an agreement, titled "License Agreement," with GALC to use Lot Radio Barrigada C aka Parcel N5-D for a slaughterhouse facility. (*See* License Agreement, Ex. A, ECF No. 1 at 16–28.)

The Lot was part of the land determined to be unneeded by the federal Government. (*Id*. at 19.) Under the terms of the Agreement, use of the land was "temporary only," and did not "grant or confer any property right or interest in the property beyond the terms and conditions" of the license. (*Id*. at 20.) The initial term of the license was one year, and WSTCO could renew by giving notice in writing to GALC at least 60 days prior to the end of the term. (*Id*.) For each calendar year, WSTCO agreed to pay four percent of its annual gross sales derived from the property "until the license ripens into a lease." (*Id*. at 20–21.)

---

[1] Rojas Mot. to Dismiss, ECF No. 8; Rojas Decl., ECF No. 9; Ex. A, ECF No. 9-1; GALC Mot. to Dismiss, ECF No. 12; Rojas Joinder of GALC Mot., ECF No. 17; Pl's. Opp. to Rojas Mot., ECF No. 19; Pl's. Opp. to GALC Mot., ECF No. 21; Rojas Reply Br., ECF No. 23; GALC Reply Br., ECF No. 26. Pl's. Mot to Amend, ECF No. 44; Razzano Decl., ECF No. 45; GALC Opp. Br., ECF No. 46; Pl's. Reply to GALC Opp. Br., ECF No. 47; GEDA Opp. Br., ECF No. 49; Pl's. Reply Br. to GEDA's Opp. Br., ECF No. 50; Rojas Joinder in Opp., ECF No. 52; Mot. for Protective Order, ECF No. 53; GALC Joinder in Mot., ECF No. 54; Stipulation, ECF No. 55; Razzano Decl., ECF No. 56; Opp. Br., ECF No. 57; Mot. to Strike Joinder, ECF No. 59; Reply Br., ECF No. 60; Opp. to Mot. to Strike Joinder, ECF No. 61.

In June 2006, GALC and GEDA entered into a Memorandum of Understanding through which GEDA would manage GALC Trust property, including Parcel N5-D, and would manage leases and collect rent. (MOU, Ex. C., ECF No. 1 at 43–49.) Further, GEDA was required to prepare appraisals and development studies, evaluate development proposals, and recommend the execution of leases and development. (*Id*.) GALC was required to execute development and lease agreements recommended by GEDA and execute other documents required for GEDA to carry out its duties. (*Id*. at 47.)

According to Plaintiff, the Agreement and MOU imposed the following limitations on Defendants: (1) GEDA must find a material breach before terminating the lease; (2) GALC could not unilaterally cancel the Agreement; and (3) GALC had no role in property management. (Compl. ¶¶ 21, 22, 27.) Furthermore, under the Agreement, WSTCO had to pay only a "nominal rent" but GALC asked "at some point" for and received an increased rent of $2,100. (*Id*. ¶¶ 23–24.)

On May 26, 2009, then-director of GALC, Ed Benavente, sent WSTCO a notice that "effective immediately, management of the property and all future issues regarding the property would be handled by GEDA" under the MOU. (*Id*. ¶ 25.) Following this, Plaintiff alleges that it was standard practice for GEDA to address all property management issues, send deficiency notices to tenants, and use its own attorneys to take legal action. (*Id*. ¶¶ 30–32.)

On July 24, 2009, GALC sued the Estates of Jose Martinez Torres and Maria Calvo Torres for allegedly defrauding it, and eight days later notified WSTCO, which is operated by the heirs of those Estates, that it wanted to terminate the Agreement "as soon as is practicable since it now ha[d] other plans" for the parcel and despite not having notified WSTCO of any breaches of the agreement. (*Id*.

¶¶ 33–35.) WSTCO ignored the letter from GALC and attempted to renew the lease with GEDA. (*Id*. ¶¶ 36–37.) GEDA refused to renew the Agreement on instruction from William Bischoff who claimed to serve as counsel for GALC. (*Id*. ¶ 37.)

On July 12, 2010, GALC informed WSTCO that the Agreement was "revoked, cancelled, and not renewed" even though the Agreement had not been breached and GEDA had not informed GALC of any breach. (*Id*. ¶¶ 39, 43–44.) Plaintiff alleges that this cancellation was unlawful because GEDA, and not GALC, oversaw the Agreement as per the MOU and GALC's "own customs," and that the cancellation was motivated by animus against the Estates that GALC accused of defrauding it. (*Id*. ¶¶ 46–48.) Further, Plaintiff alleges that GEDA "agreed with this wrongful act" because it instructed WSTCO to address all legal correspondence to GALC's counsel instead of GEDA's counsel. (*Id*. ¶ 49.)

Following these events, on August 16, 2010, GALC sued WSTCO in the Superior Court of Guam to attempt to invalidate WSTCO's notice of renewal. (*Id*. ¶ 54.) Plaintiff alleges that the suit was also motivated by animus against the Estates and the seven year litigation has injured Plaintiff by making it impossible to implement the slaughterhouse. (*Id*. ¶ 55–58.) The Superior Court held a bench trial and on June 2, 2017, found that the license agreement was a lease and it could have been terminated if a material breach of contract occurred. (Guam Super. Ct. Findings of Fact and Conclusions of Law ¶¶ 13, 21, Ex. B, ECF No. 1 at 38–39.) Because no breach had been found and Defendants did not object to the untimeliness of the renewal notice, the Agreement was not terminated in 2010. (*Id*. ¶¶ 21, 24, ECF No. 1 at 39–40.)

4

Subsequent to the Superior Court's decision, GALC held a meeting in June 2017 to discuss terminating the WSTCO lease. (Minutes of June 27, 2017 meeting, Compl. Ex. E.) The GALC Defendants voted to terminate the lease effective April 30, 2018. (*Id.*) Four months later, on October 4, 2017, Defendant Rojas, as the GEDA Administrator, and GALC's chairman Anthony J.P. Ada, sent a letter to WSTCO notifying it that the lease has been terminated. (Compl. ¶ 64, Ex. D.)

Based on the above events, Plaintiff alleges that the GALC Defendants violated its due process rights, and that all Defendants conspired to violate its due process rights. (Compl. ¶¶ 74–89.) Additionally, Plaintiff alleges that it was treated differently from similarly situated leaseholders and therefore all Defendants violated its equal protection rights. (*Id.* ¶¶ 90–95.)

All Defendants have now filed motions to dismiss. (ECF Nos. 8, 12.) Defendant Rojas filed a motion to dismiss the second and third claims against him (ECF No. 8), and also joined the GALC Defendants' motion to dismiss all three claims. (*See* ECF Nos. 12, 17.)

Following the March 7, 2018, hearing on the motions to dismiss, Plaintiff filed a motion to amend the complaint. (ECF No. 44.) Defendants oppose the motion to amend. (*See* GALC Defs. Opp. Br., ECF No. 46; GEDA Opp. Br., ECF No. 49.) Defendant Rojas also filed a motion for a protective order to enforce the Court's order staying discovery while the motions to dismiss are pending. (ECF No. 53.) The parties subsequently filed a stipulation regarding the motion for protective order. (ECF No. 55.) In this order, the Court addresses all three of these motions.

### III. LEGAL STANDARDS

Defendants seek to dismiss under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual

5

matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-pleaded allegations could "plausibly give rise to an entitlement to relief." *Id*. (quoting *Iqbal*, 556 U.S. at 678-79). If the well-pleaded allegations "are merely consistent with a defendant's liability," the plausibility threshold has not been satisfied. *Id*. (quoting *Iqbal*, 556 U.S. at 678.) But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to amend, a district court must analyze five factors: bad faith, undue delay, prejudice to the opposing party, futility, and whether a plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Futility alone justifies denying leave to amend. *Id*.

### IV. DISCUSSION

**A. Defendants' Motion to Dismiss**

Although there are two separate motions to dismiss, because Rojas joined the motion filed by the GALC Defendants, and the arguments raised in the latter motion (ECF No. 12) are dispositive, the Court will address only the arguments raised in the GALC Defendants' motion.

### i. Due Process Claim

Defendants maintain that Plaintiff lacks a protected property interest in the Agreement because it is a business contract with a government agency, and further that Plaintiff has failed to show what process was due because the Agreement and Guam law "do not establish a procedure to effect termination." (GALC Mot. 13–18, ECF No. 12.)

To plead a due process claim, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 974 (9th Cir. 2002) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). "Property" is defined by state law, but whether it is protected by the due process clause is not. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

In this case, Plaintiff submits that the Agreement between it and GALC is constitutionally protected property. Assuming that the Agreement, which the Superior Court found to be a lease, is a property right under Guam law, the right is not constitutionally protected and therefore cannot give rise to a due process claim. That a contract does not always give rise to a constitutionally protected property interest is especially true in the case, as here, of government contracts. Although some contracts may fall within the protections of the due process clause, the "prime protected category" is employment contracts due to the "security with which the interest is held under state law and its importance to the holder." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1409 (9th Cir. 1987) (internal quotation omitted). Thus, although other contracts may be constitutionally protected, "the farther the purely contractual claim is from an interest as central

7

to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts." *Id*. at 1409–10. Underlying this doctrine are two principles: (1) when a government enters into contracts, it is functioning in its commercial as opposed to sovereign capacity, and (2) "federal courts are reluctant to embroil the judiciary in the management and operation of state contract disputes." *Educ. Networks of Am., Inc. v. Wasden*, Case No. 16-cv-00379, 2017 WL 411206, at *7 (D. Idaho Jan. 30, 2017) (quoting *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001)).

Here, the terms of the Agreement, notwithstanding that the Superior Court found that it was a lease, do not suggest that Plaintiff has a protected property right. Construing the terms of the Agreement, the lease does not contain any terms about how GALC or GEDA may terminate the lease and states expressly that it does not confer a property right. Even if, as the Guam Superior Court indicated, the parties intended for the Agreement to eventually become a long-term lease, nothing indicates that "long-term" meant "indefinite." That an entity enjoyed a benefit from a contract for a number of years does not, "without more, rise to the level of a legitimate claim of entitlement." *Doran v. Houle*, 721 F.2d 1182, 1186 (9th Cir. 1983) (finding no constitutionally protected property interest in annual veterinary permits). Thus, the terms of the Agreement do not indicate that this contract is a constitutionally protected property interest.

The Agreement in this case is not an employment contract for an individual, but a commercial lease with a corporate entity, which is far from what the Ninth Circuit has typically protected. *See, e.g.*, *Burglin v. Morton*, 527 F.2d 486, 488 (9th Cir. 1975) (finding the Mineral Leasing Act gave the Secretary discretion as to whether to lease and for the duration and therefore a lease could not vest

8

plaintiffs with a right to a lease); *Oceanside Golf Inst., Inc. v. City of Oceanside*, 876 F.2d 897, at *3 (9th Cir. 1989) (unpublished) (finding contract granting entity a leasehold interest was not property for due process purposes); *RCA Global Commc'ns, Inc. v. U.S. Dep't of Interior*, 432 F. Supp. 791, 795 (D. Guam 1977) (finding lease was not a protected property right because lease permitted termination at any time on three months' notice in writing); *Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1116 (S.D. Cal. 2016) (finding no property interest in sale agreement because prediction of long-term continuance did not rise to more than a discretionary privilege).

Plaintiff relies on three cases from other jurisdictions and the Guam Superior Court order to support its argument. With respect to the Guam Superior Court decision, although the court set forth certain rights that Plaintiff had under the Agreement, such as exclusive possession, the court addressed them in the context of describing a lease, not to decide whether Plaintiff had a property right that could give rise to a due process claim. The other cases relied on are not persuasive. Those cases involve the property law of other states, not Guam, and therefore are not determinative of whether a lease is a recognized property interest under Guam law. More critically, however, is that each case involved an agreement or statute that provided for express procedures that must be followed prior to termination. In *Thomas v. Cohen*, the Kentucky statute provided for a specific eviction process that the state officials were required to follow prior to removing residential tenants. 304 F.3d 563, 576 (6th Cir. 2002). In *Grayden v. Rhodes*, the court found that a due process claim had been pleaded by residential tenants because, under Florida law, even at-will tenancies were protected property interests, and the city code provided for notice and hearing procedures that had to be followed prior to an order to vacate. 345 F.3d 1225, 1232, 1234 (11th Cir. 2003). Finally, in the case of *In re Med. Educ. & Health Servs.,*

9

*Inc.*, the Bankruptcy Court for Puerto Rico held that a commercial leaseholder had stated a claim against the mayor because the termination letter did not follow the contract's dispute resolution process, which expressly required negotiation and other steps prior to termination. 459 B.R. 527, 539–40 (D. Puerto Rico 2011). No similar provisions exist under Guam law or in the Agreement.

Accordingly, Plaintiff lacks a constitutionally protected property right and the claim for a due process violation is dismissed with prejudice.

### ii. Conspiracy to Violate Due Process

Because the Court finds that Plaintiff does not have a constitutionally protected property interest and therefore cannot state a claim for a due process violation, Plaintiff also cannot state a claim for conspiracy to violate due process. Accordingly, this claim is dismissed with prejudice.

### iii. Equal Protection Claim

Defendants last contend that Plaintiff has failed to state a claim because it "is not a member of a suspect class" and because the reasons for termination in the October 2017 letter were reasonable and provide a rational basis for termination. (GALC Mot. 18–20.)

To succeed on a "class of one" equal protection claim, a plaintiff must demonstrate that the state actors intentionally treated him differently than those similarly situated without a rational basis. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Contrary to Defendants' assertion, it is not required that a plaintiff be a member of a suspect class to state an equal protection violation. *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012). Instead, in cases not involving a suspect class, an equal protection violation occurs only if there is not a rational relationship "between the disparity of treatment and some legitimate

10

governmental purpose." *Id.*

Nevertheless, Plaintiff has failed to state an equal protection claim. In the complaint, Plaintiff offers only the conclusory statements that GALC and Rojas have not "treated similarly situated individuals in the same manner" and that WSTCO is similarly situated to "several other leaseholders of Commission land" but was treated differently due to animus. (Compl. ¶¶ 72, 94.) No factual allegations are included to indicate whether other leaseholders with similar agreements did not have the agreements terminated or that the other leaseholders were given notice and an opportunity to be heard. Significantly, Plaintiff fails to specify what the "acts or omissions" were and therefore it is unclear whether Plaintiff claims that it was treated differently in that the lease was terminated, in how it was terminated, or that the animus is itself the different treatment. Instead, Plaintiff has included only conclusory allegations and therefore failed to state a claim. *See Konarski v. Rankin*, 603 F. App'x 544, 546–47 (9th Cir. 2015) (plaintiffs failed to plead equal protection claim because they provided no facts to show "similarly situated individuals were treated differently or otherwise implying that there was no rational basis for the difference in treatment"). Accordingly, Defendants' motion to dismiss the equal protection claim for failure to state a claim is granted.

### iv. Affirmative Defenses

Defendants assert that they are entitled to qualified immunity. (Mot. 23–26.) They also argue that a two-year statute of limitations applies and therefore bars all of Plaintiff's claims that accrued prior to November 22, 2015. (*Id.* at 26–27.) Because Plaintiff has failed to state a claim, the Court need not address these two defenses.

### B. Plaintiff's Motion to Amend

Plaintiff seeks to amend all claims by adding more facts and adding GEDA the entity as a defendant. Defendants oppose the motion. (*See* GALC Defs. Opp. Br., ECF No. 46.)

As set forth above, Plaintiff does not have a constitutionally protected property right and therefore cannot state a claim for violation of due process and conspiracy to violate due process. The motion to amend these two claims is denied as futile.

However, with respect to the equal protection claim, the Court will grant leave to amend. Plaintiff's original complaint suffers from a lack of factual allegations to support its claim, but the Ninth Circuit has emphasized that there "exists a presumption under Rule 15(a) in favor of granting leave to amend" unless the opposing party will suffer prejudice or there is a strong showing of undue delay, bad faith, repeated failure to cure deficiencies, or futility. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Progs., Ltd. v. Leighton*, 833 F.2d 183, 184 (9th Cir. 1987)

In this case, there is no evidence of bad faith and no undue delay on Plaintiff's part. Additionally, discovery is not completed and is stayed pending the Court's ruling on the motions to dismiss. Thus, Defendants will not be unduly prejudiced by permitting Plaintiff to amend, for the first time, its complaint. Finally, the Court did not issue its ruling on the motions to amend before Plaintiff filed its motion to amend and therefore Plaintiff did not know the basis on which the Court would dismiss its equal protection clause. In light of the Ninth Circuit's liberal construal of Rule 15 and the fact that the futility of Plaintiff's claim is uncertain, the Court will allow Plaintiff to amend the equal

protection clause claim.

Furthermore, with respect to adding GEDA as a party, the GALC Defendants claim that GEDA is not a "person" for purposes of section 1983 claims and therefore cannot be named in this case.[2] (Opp. Br. 4, ECF No. 46.) Only a "person" may be liable in section 1983 cases. *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1234 (9th Cir. 2015). A State is not a "person" within the meaning of section 1983, and therefore the State and governmental entities considered "arms of the State" may not be sued under section 1983. *Will v. Mich. Dep't of State Police*, 491 US. 58, 70–71 (1989); *Pittman v. Or. Emp't Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007). To determine whether an entity is an arm of the state, a court must consider five factors: (1) "whether a money judgment would be satisfied out of state funds"; (2) "whether the entity performs central governmental functions"; (3) "whether the entity may sue or be sued"; (4) "whether the entity has the power to take property in its own name or only the name of the state"; and (5) the "corporate status of the entity." *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 566 (9th Cir. 2001).

Here, the Ninth Circuit has held that the government of Guam is not a "person" within the meaning of section 1983 when sued for damages. *Paeste*, 798 F.3d at 1234. Thus, the question is whether GEDA is an arm of the state. The GALC Defendants contend that GEDA is an arm of the state because it has been clearly decided that the government of Guam is not a "person." (Opp. Br. 4.

---

[2] GEDA has also filed a brief opposing the motion to amend. (GEDA Opp. Br., ECF No. 49.) GEDA is not a party and has not sought leave to intervene. Accordingly, GEDA is not entitled to file an opposition brief and the Court will strike it. *See LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (allowing non-party to intervene to oppose motion to amend); *VFD Consulting, Inc. v. 21st Sevs., 21st Holdings, LLC*, Case No. 04-cv-2161, 2005 WL 1115870 (N.D. Cal. May 11, 2005) (same).

(citing *Paeste*, 798 F.3d 1228 and *Ngiraingas v. Sanchez*, 110 S. Ct. 1737 (1990)).) This does not answer the question, however, of whether GEDA qualifies as part of the government of Guam.

The first factor, whether the State will be liable for a judgment against GEDA, does not weigh in favor of any of the parties as none have provided evidence to show whether GEDA of the government of Guam will ultimately bear the burden of a judgment. Plaintiff claims that the government of Guam is not liable for judgments against GEDA because it generates its own revenue, but offers no authority to support this contention.

The second factor, whether the entity carries out central governmental functions, weighs in favor of finding GEDA to be an arm of the state. This second factor is to be construed broadly. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1426 (9th Cir. 1991). As set forth in the powers of GEDA, it may "recommend to the Governor of Guam the issuance, modification, revocation and suspension of Qualifying Certificates" and "shall submit to the Legislature, through the Governor of Guam, from time to time such legislation as it deems necessary to expeditiously and effectively foster desirable industry, commerce, hospital facilities, housing and tourism in this Territory." 12 G.C.A. § 50104(o), (p). These powers suggest that, in addition to more commercial activities such as purchasing property, GEDA performs some governmental functions for the Governor of Guam. Furthermore, the statutory purpose of GEDA indicates that it will "serve the public welfare to stimulate an increase in the supply of decent, safe and sanitary housing," and due to the critical shortage of housing, "the assistance contemplated" is a "public purpose." 12 G.C.A. § 50103(a). Further, GEDA would be authorized to "control and implement that part of the basic plan for the economic development of Guam, assigned to it by the Governor of Guam." 12 G.C.A. § 50103(b). That GEDA's purpose, which is to address a

14

housing shortage on Guam, has been described by statute as a "public purpose" indicates that it is carrying out a governmental objective and therefore performs a central government function. *Durning*, 950 F.2d at 1426 (finding economic development corporation's purpose, described as a "valid public purpose," to provide public housing was a central government function).

The third factor weighs against finding that GEDA is an arm of the state, as the statute expressly provides for GEDA "[t]o sue and to be sued in its corporate name." 12 G.C.A. § 50104(d).

The fourth factor also weighs against finding that GEDA is an arm of the state because GEDA is empowered to "acquire, in any lawful manner, any real property, and to hold, maintain, use and operate the same; and to sell, lease, encumber or otherwise dispose of the same." 12 G.C.A. § 50104(f).

Finally, it is undisputed that GEDA is a "public, non-profit corporation" under Guam law. 12 G.C.A. § 50101(a).

These factors taken together weigh in favor of finding that GEDA is not an "arm of the state." *See Dunning*, 950 F.2d at 1426–27 (finding Wyoming Community Development Authority was not arm of the state). This conclusion is also consistent with rulings from the Guam Supreme Court, which held that, while GEDA is an "official body of the territory of Guam" for purposes of the Open Government Act, it is not a governmental entity that enjoys the protections of sovereign immunity. *Guam Radio Servs., Inc. v. Guam Econ. Dev. Auth.*, 2000 Guam 1 ¶¶ 13, 16–17, 22 (2000); *Guam Econ. Dev. Auth. v. Island Equip. Co., Inc.*, 1998 Guam 7, ¶¶ 9 (1998) (holding GEDA is not an "instrumentality of the government exercising governmental functions" and therefore is not entitled to sovereign immunity). Accordingly, because GEDA to not an arm of the state, Plaintiff's motion to

15

add GEDA as a Defendant is granted.

### C. Rojas' Motion for Protective Order

Because the Court has granted the motions to dismiss the claims, the stay of discovery—which the Court intended to cover *all* aspects of discovery, including depositions—is no longer needed and the motion for a protective order is denied as moot. Plaintiff's motion to strike the joinder in the motion by the GALC Commissioners (ECF No. 59) is also denied as moot.

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 8, 12) are GRANTED.

Plaintiff's motion to amend (ECF No. 44) is GRANTED IN PART as to the equal protection claim and request to add GEDA as a party, and DENIED IN PART as to the remaining claims, which are dismissed with prejudice. Plaintiff must file an amended complaint within fourteen (14) days of the date of this order.

Defendant Rojas's motion for a protective order (ECF No. 53) is DENIED AS MOOT. Further, Plaintiff's motion to strike the notice of joinder by the GALC Commissioners (ECF No. 59) is DENIED AS MOOT.

**SO ORDERED** on July 3, 2018.

_____
RAMONA V. MANGLONA, Designated Judge